LAW OFFICE OF TODD D. LERAS
Todd D. Leras, CA SBN 145666
455 Capitol Mall, Suite 802
Sacramento, California 95814
(916) 504-3933
toddleras@gmail.com
Attorney for Defendant
DANNY TROXELL

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>DANNY TROXELL,<br><br>　　　　　　Defendant. | Case No.: 2:19-cr-0107 KJM<br><br>MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, NEW TRIAL<br>[Rule 29(a) Fed.R.Crim.Proc.]<br><br>Date:　　August 21, 2024<br>Time:　　9:00 a.m.<br>Court:　　Hon. Kimberly J. Mueller |

**I.    INTRODUCTION**

Defendant Danny Troxell brings this Motion for Judgment of Acquittal, or in the alternative for a new trial, pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure (hereafter "FRCP").  The motion is directed at the following:  (1) Special Sentencing Factor Five as alleged as a sentencing enhancement to Count One of the Superseding Indictment, which charges a Conspiracy to Participate in a Rackateering Influenced Corrupt Organization (hereafter

MOTION FOR JUDGMENT OF ACQUITTAL

the "RICO charge"); and (2) Count Three, which charges a Conspiracy to Commit Murder. (ECF Entry 1375).

The argument in support of Defendant's Motion is quite simple. The government failed to prove an essential element of the enhancement (Special Sentencing Factor Five) to the RICO charge in Count One and the Conspiracy to Commit Murder charge set out in Count Three. Specifically, the government failed to prove that an overt act occurred *after* an agreement had been made to kill the victim named in Count Three – James Mickey. This failure of proof was compounded by the government's rebuttal argument which erroneously invited the jury to find an overt act based on conduct occurring before an agreement to commit murder existed or after the murder had been completed. These failures require that a judgment of acquittal be entered as to the challenged enhancement to Count One and as to Count Three in its entirety.

**II.    BACKGROUND**

This Court, having presided over a lengthy jury trial in this matter, is familiar with the facts and background of the case. Trial of this matter commenced with jury selection on February 20, 2024. The government called its first witness on February 26, 2024. The jury trial of the matter involved the government calling numerous witnesses and presenting real evidence in support of the charges set out in the Superseding Indictment. As to the charged plots to commit murder, the government presented numerous clips of recorded telephone conversations intercepted pursuant to court-authorized wiretaps of Ronald Yandell's contraband prison cell phone.

The government rested its case-in-chief on March 28, 2024. Defendants Yandell, Sylvester, and Troxell all noticed oral motions, to be supplemented by later briefing, pursuant to Rule 29 of the Federal Rules of Criminal Procedure ("FRCP"). This Motion for Judgment of

MOTION FOR JUDGMENT OF ACQUITTAL

Acquittal as to Count Three and Special Sentencing Factor Five is brought pursuant to Rule 29(a) and the prior oral notice.

### III.     STANDARD FOR A MOTION UNDER RULE 29

FRCP Rule 29(a) provides:

> "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.  The court may on its own consider whether the evidence is sufficient to sustain a conviction.  If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so."

In ruling on a Rule 29 Motion the court must view the evidence in the light most favorable to the government.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that in considering a motion for judgment of acquittal, the court must view the evidence presented in the light most favorable to the government.).   Rule 29 challenges the sufficiency of the evidence to support a charged crime, so evidence supporting the challenged offense must be reviewed to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319.

The facts most favorable for the government establish that Defendants Ronald Yandell and Danny Troxell were, in August 2016, members and commissioners of the Aryan Brotherhood (the "AB").  The AB is an all-male California-based prison gang.  The AB is run by a three-member Commission. The Commission's duties include resolving disputes between members and approval of any order to murder a current or past member of the AB.

Count Three alleges that between August 20-21, 2016, Yandell and Troxell conspired with AB associate Travis Burhop to murder AB member James Mickey.  Burhop, who testified as a cooperating defendant, was auditioning for membership in the AB.

MOTION FOR JUDGMENT OF ACQUITTAL

At the time of the charged plot to kill Mickey, the Commission consisted of Ronald Yandell, Danny Troxell, and David Chance. It appears that a simple two-thirds majority of the Commission could approve a member's killing, although there is some evidence to suggest that a unanimous decision of the Commission was required to authorize such an action.

The AB operated on a principle of "Blood In, Blood Out." Blood In meant that recruits were either required to kill or might be called upon in the future to kill for the benefit of the AB. Willingness to commit a violent act constitutes the entry fee for membership. Blood Out means that a member must stay in the group and keep its secrets inviolate, particularly from law enforcement, until death by natural or violent means.

An AB member could be "put in the hat" (that is, marked for death) for any number of reasons. These include, among other reasons, having a sex offense - especially an offense against a child-victim, cooperating with law enforcement, showing cowardice during a fight – particularly a fight with another racial group, and incurring significant drug debts. The latter particularly included racking up debts to another racial group. Each member or associate involved in dealing drugs to inmates was required to pay a thirty percent tax to the AB.

James Mickey, an AB member, failed to forward his tax to the AB. He also ignored directives from the Commission to report to Pelican Bay and explain his transgression to the AB Commission. As a result, Mickey had reputedly been marked for violent assault.

Travis Burhop was confined at Calipatria State Prison in August 2016. He oversaw the entire prison. He was also auditioning for a role as a member of the AB. His drug dealing was prolific, amounting to profits of at least $10,000 per month. In mid-August, James Mickey was housed in the Administrative Segregation Unit ("AdSeg") in a form of protective custody at Calipatria State Prison. His protective custody status flowed from potential threats to his safety.

MOTION FOR JUDGMENT OF ACQUITTAL

In mid-August 2016, the prison released Mickey into general population on A Yard at Calipatria State Prison. Travis Burhop was housed on B Yard, a separate area of the prison. Consequently, Travis Burhop had no ability to personally harm James Mickey. Burhop was aware of rumors that the AB had green lighted Mickey.

Burhop reached out by telephone to Ronald Yandell. His purpose being to confirm James Mickey's status as being marked for death. Because James Mickey was an AB member, Burhop wanted to make sure that he was truly "in the hat." The AB's rules called for violent reprisal against someone initiating unauthorized violence against another AB member.

On August 20, 2016, a court-authorized wiretap on Yandell's contraband cell phone intercepted a call between Burhop and Yandell. Burhop informed Yandell that "Mickey had hit A Yard at Calipatria."  Yandell said that he was going to have "that dude [Mickey] hit." Yandell indicated that he was waiting to speak to Danny Troxell about his intention toward Mickey. Burhop then volunteered that he had spoken to Troxell that morning. Burhop relayed that "Troxell pretty much agreed" that Mickey needed to be "whacked." A call later the next evening between Yandell and Troxell arguably confirms this information. Viewed in a light most favorable to the government, the evidence therefore supports that two of the three AB Commissioners had potentially authorized a violent attack on James Mickey as of August 20, 2016.

The evidence meets the threshold for a jury to determine that a plot to kill James Mickey came into existence between August 20 and 21, 2016. The plan had been openly discussed between Yandell and Burhop on August 20, with a confirming call from Yandell to Danny Troxell the next day. Burhop relayed that he had already discussed the plot with Troxell earlier during the morning of August 20. An intercepted call between Yandell and Troxell during the

MOTION FOR JUDGMENT OF ACQUITTAL

evening of August 21, 2016, the content of which did not expressly mention James Mickey, supports inferences which would allow a jury to conclude that Troxell and Yandell both signed off on the plot to kill Mickey that evening. In other words, two out of three AB Commissioners agreed to target James Mickey for violent assault or murder as of August 21, 2016.

Execution of the plot fell to Travis Burhop. This was true for obvious reasons. Yandell was confined hundreds of miles away at California State Prison, Sacramento. Troxell was an inmate at California State Prison, Lancaster, in Los Angeles County. It was a physical impossibility for Yandell or Troxell to physically threaten James Mickey.

Burhop, in contrast to Yandell and Troxell, was at the same facility as James Mickey – Calipatria State Prison. Burhop proudly ran the entire prison, but he lacked the ability to get physically close to the yard where Mickey had been released during the short two-day period of August 20-21, 2016.

Burhop had motive to put into action a plan to kill Mickey. He was a probationary recruit vying for membership in the AB. He wanted to demonstrate his willingness to kill, a requirement he believed necessary to achieve full membership. However, Burhop harbored a secret agenda. He testified at trial that he did not want to kill James Mickey. In fact, he fervently hoped that circumstances would change and that he would not be called upon to arrange Mickey's death. He therefore sat on his hands. He did nothing to put the plot in motion.

Fortunately for Burhop, Task Force Officer Doug McClure, a co-case agent in the investigation at issue in this case, heard the telephone calls discussing the plot to kill James Mickey. He contacted Calipatria State Prison and had James Mickey placed back into protective custody by prison authorities.

MOTION FOR JUDGMENT OF ACQUITTAL

The plot to kill Mickey, in short, was thwarted before any steps could be taken to achieve it. Once an agreement between the conspirators came into existence no later overt act toward the completion of the planned assault on James Mickey ever took place. Travis Burhop testified that he received this information as welcome news, although he continued to pretend that he would have executed the plan absent the unexpected and unforeseen movement of Mickey back to protective custody.

For the reasons set out below, the government's evidence fails to establish, or even address, the overt act required to establish a conspiracy to commit murder against James Mickey as required under California Penal Code §§ 182, 187, and 189. Accordingly, a judgment of acquittal as to Count Three and Special Sentencing Factor Five as to Count One is required.

### IV. LAW AND ARGUMENT

#### A. Conspiracy to Commit Murder

Count Three expressly charges a violation of 18 U.S.C. § 1959(a)(5). That section summarizes the nature of the charge in relevant part as follows:

> (a) Whoever, … for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished –
>
> (5) for attempting or conspiring to commit murder or kidnapping, by imprisonment for not more than ten years or a fine under this title, or both[.]

The essential elements for the Crime of "Conspiracy to Commit Murder in Aid of Rackateering" are set out in the Ninth Circuit's *Manual of Model Criminal Jury Instructions* (2022 edition, updated August 2023). Specifically, Model Instruction 18.8 (as modified and proposed by Defendant Danny Troxell) provides in relevant part as follows:

MOTION FOR JUDGMENT OF ACQUITTAL

The defendant is charged in [Count Three of the Superseding Indictment] with [conspiring to commit] a crime of violence, specifically, [murder] in aid of a racketeering enterprise in violation of Section 1959 of Title 18 of the United States Code. For a defendant to be found guilty of that charge, the government must prove each of the following four[1] elements beyond a reasonable doubt:

First, on or about the time period described in [Count Three], an enterprise affecting commerce existed;

Second, the enterprise engaged in racketeering activity;

Third, the defendant [conspired to commit] the following crime of violence: [Conspiracy to Unlawfully and Intentionally Murder James Mickey in violation of California Penal Code Sections 182, 187, and 189] as defined in [CALCRIM Instruction 563 (2023 edition)]; [and]

Fourth, the defendant's purpose in [conspiring to commit] [the Conspiracy to Murder James Mickey] was to gain entrance to, maintain, or to increase [his] position in the enterprise.

California law, in turn, defines in the book of approved jury instructions or CAL CRIM at Instruction 563 the elements of the crime of Conspiracy to Commit Murder in violation of Penal Code sections 182, 187 and 189. Instruction 563 was offered in its entirety by Defendant Troxell. The Court gave an abbreviated version of Instruction 563 to the jury over defense objection. The relevant portions of Instruction 563, based on the statutory language in Penal Code Sections 182, 187, and 189, provide as follows:

> To prove a defendant is guilty of Conspiracy to Commit Murder [the Government] must prove that:

---

[1] The Comment section to Instruction 18.8 discusses a potential fifth element. This fifth element requires a defendant to commit a "substantial step" toward committing the crime is required when the specified offense involves an attempt or conspiracy to commit a crime of violence. Here, this Court determined the fifth element to be superfluous because California law and pertinent jury instructions expressly define the crime of "Conspiracy to Commit Murder" in violation of Penal Code sections 182, 187, and 189.

MOTION FOR JUDGMENT OF ACQUITTAL

1. The defendant intended to agree and did agree with [one or more of the other defendants] to intentionally and unlawfully kill;

2. At the time of the agreement, the defendant and [one or more] of the other alleged members of the conspiracy intended that one or more of them would intentionally and unlawfully kill;

3. One of the defendants [or all of them] committed [at least one of] the following overt acts alleged to accomplish the killing [list of overt acts]; AND

4. [At least one of these] overt act(s) was committed in California.

To decide whether [a] defendant committed [this] overt act, consider all the evidence presented about the overt act.

***

The [Government] must prove that members of the alleged conspiracy had an agreement and an intent to commit murder. The [Government does] not have to prove that any alleged members of the alleged conspiracy actually met or came to a detailed or formal agreement to commit that crime. An agreement may be inferred from conduct if you conclude that members of the alleged conspiracy acted with a common purpose to commit the crime.

An overt act is an act by one or more members of the conspiracy that is done to help accomplish the agreed upon crime. The overt act must happen after the defendant has agreed to commit the crime. The overt act must be more than the act of agreeing to or planning to commit the crime, but it does not have to be a criminal act itself.

The task of determining whether an overt act has been established is made considerably easier when, as here, the government fails to present any evidence of an essential element of the charged crime and enhancement. The element at issue is the required overt act in furtherance of the conspiracy to commit murder. The government failed to expressly charge any overt act in Count Three, proceeding on the apparent premise that it was not required. (ECF Entry 2263).

California law is clear that an overt act is required to be plead and proved to support a violation of Penal Code Sections 182, 187, and 189. *People v. Morante,* 20 Cal. 4th 403, 416 (California Supreme Court 1999) (listing elements of conspiracy to commit murder); *People v. Swain,* 12 Cal. 4th 539, 600 California Supreme Court 1996). The charged violation at issue in

MOTION FOR JUDGMENT OF ACQUITTAL

Count Three is expressly based on California law. Count Three, according to the language of the Superseding Indictment, the charged violation 18 U.S.C. § 1959(a)(5), in turn flows from "a violation of California Penal Code Sections 182, 187, and 189." Superseding Indictment (ECF Document 1375, page 12, lines 22-24).

The government's failure to prove that an overt act had occurred *after* an agreement to kill Mickey had been formulated was compounded by the government's rebuttal argument. The Court rejected the joint request of all defendants requiring the following: (1) that the government be required in advance of closing argument to expressly plead what overt acts it intended to offer to support the charged conspiracies to commit murder; (2) a special finding form be provided to the jury as to the overt act supporting a charged conspiracy to commit murder; and (3) an instruction requiring unanimity as to the overt act for each charged conspiracy to commit murder. (ECF 2263).

The defects flowing from rejection of defense efforts to require the government to flesh out in advance its overt act theory was compounded during closing argument. Assistant United States Attorney Ross Pearson displayed in rebuttal argument a handwritten chart claiming, among other things, that the following are sufficient to constitute overt acts:

- Spreading rumors about the victim
- Erasing phones

(ECF Entry 2348).

AUSA Pearson further argued that pre-plot formation conduct such as spreading rumors about the intended victim are sufficient to constitute overt acts. At the same time, he argued that post-killing conduct such as wiping a phone clean could constitute the requisite overt act. Both arguments are not tenable. Politicking for an AB member to be targeted cannot constitute an

MOTION FOR JUDGMENT OF ACQUITTAL

overt act. It necessarily occurs before a plot to murder comes into existence. Post-assault tampering with evidence similarly cannot constitute an overt act toward completion of a murder plot.

Here, the evidence shows that James Mickey was in bad standing before August 20, 2016. However, Burhop remained unsure about whether the AB Commission had approved a hit order. The government's evidence shows that Burhop had good reason to be uncertain. Even Ronald Yandell, a member of the three-man AB Commission, wanted to confirm with Danny Troxell that Mickey was targeted. Hence, Yandell's insistence on speaking with Troxell instead of relying on Burhop's representation about Troxell's position.

Yandell's call to Troxell occurred after Burhop relayed that Burhop had himself spoken to Troxell about James Mickey on August 20, 2016. Yandell nevertheless desired to hear the news direct from Troxell's mouth. The phone call between Yandell and Troxell, which took place during the evening of August 21, 2016, confirms that Yandell desired confirmation. The call between Troxell and Yandell is the point at which, as a best-case scenario for the government, the agreement to target James Mickey came to fruition.

Upon completion of the call, according to the government's evidence, a majority of the AB Commissioners (two out of three) had finally agreed to target Mickey. After the August 21st call, neither Burhop, Yandell, nor Troxell engaged in any overt act toward the assault/murder of Mickey. Burhop simply sat on his hands and felt relief when he learned that prison officials had already moved Mickey.

California law is crystal clear that an overt act must occur after a plot to kill comes into existence. The government's improper rebuttal argument relieved it of the need to prove an

MOTION FOR JUDGMENT OF
ACQUITTAL

essential element of a Conspiracy to Commit Murder – the requirement of an overt act toward commission of the offense *after* the plot comes into existence.

This is case in which the government has simply failed to bring forward any evidence of an overt act in support of the conspiracy to kill James Mickey. The plot is discussed, but neither Burhop, Yandell, nor Troxell take a single step to put it into motion. Burhop was the only conspirator with the physical proximity and resources necessary to put the plan into action. He proudly did nothing. This amounts to a failure of proof as to the required overt act.

Conspiracy is an inchoate crime. *People v. Swain*, 12 Cal. 4th 599-600 (Cal. Supreme Court 1996). "Inchoate" means "imperfect, incomplete, begun, but not completed." Black's Law Dictionary, Sixth Edition (1991). The requirement of an overt act is a statutory requirement. *Whitfield v. United States,* 543 U.S. 209 (2005). In *Whitfield,* the United States Supreme Court noted that the federal conspiracy crime before it, conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), did not expressly include an overt act requirement. The *Whitfield* decision noted that similar language in the drug trafficking conspiracy provisions of 21 U.S.C. § 846 dispensed with the statutory requirement of an overt act as to that offense. *See United States v. Shabani,* 513 U.S. 10, 13-14 (1994). Congress can dispense with the overt act requirement when defining the elements of a federal criminal offense. *Whitfield* at 215.

The present situation is quite different from that presented in *Whitfield* and *Shebani.* 18 U.S.C. § 1959 expressly yields to the State definition of Conspiracy to Commit Murder. Specifically, Section 1959(a) refers to "a crime of violence against any individual *in violation of the laws of any State* …" A crime of violence includes conspiracy to commit murder. Here, the language of Section 1959 expressly defers to California's definition of Conspiracy to Commit Murder. The government in drafting its pleading recognizes that fact. It defines Count Three as

MOTION FOR JUDGMENT OF ACQUITTAL

having occurred in violation of three specific California Penal Code sections: 182 (Conspiracy), 187 (Murder Defined), and 189 (Degrees of Murder Defined).  No similar or other federal statutory violation is mentioned in Count Three.

Congress's decision to dispense with an overt act requirement in various federal conspiracy statutes has no meaning when the prosecutor expressly relies on violations of State law.  *See Gamble v. United States,* 587 U.S. - - (2019) (holding that the United States' system of government is one of "dual sovereignty" in which Congress and the individual States are free to define and establish the elements of individual criminal offenses).  Here, the government appears to have inadvertently looked past California's overt act requirement both at the pleading and proof stages.  There is simply no evidence from which the jury can infer an overt act occurred in support of a plan to kill James Mickey.  In fact, the evidence is quite contrary to such a position.  Travis Burhop proudly declared that he did not intend to take any steps to kill James Mickey.  He hoped for some sort of external interference.  His hope was answered in short order.  It took the form of Task Force Officer McClure's intervention to ensure that no harm occurred to James Mickey.  James Mickey's return to the safety of Ad Seg occurred in such a quick fashion that a Conspiracy to Commit Murder as California defines it never occurred.  As a result, a Judgment of Acquittal is warranted as to Count Three and Special Sentencing Factor Five.

## V.   CONCLUSION

For the foregoing reasons, Defendant Danny Troxell's Motion for Judgment of Acquittal as to Count Three and Special Sentencing Factor Five to Count One should be granted.  In the alternative, Defendant Danny Troxell requests that the Court grant a Motion for New Trial based

MOTION FOR JUDGMENT OF ACQUITTAL

on the government's failure to establish the overt act required for the challenged enhancement and Conspiracy to Commit Murder.

Respectfully submitted,

DATED: June 17, 2024

By    */s/ Todd D. Leras*
      TODD D. LERAS
      Attorney for Defendant
      DANNY TROXELL

MOTION FOR JUDGMENT OF ACQUITTAL